W. L. MACATEE & SONS, INCORPORATED, v. H. C. HOUSE ET AL.

No. 7662. Decided July 9, 1941.
(153 S. W., 2d Series, 460.)

260

*Jo E. Shaw* and *Fahey & Cooper,* all of Houston, for plaintiff in error W. L. Macatee & Sons, incorporated.

Article 5452 and 5453 do not require that the material actually enter in the construction of the improvements. The requirements of said statutes are satisfied where the material is furnished for the construction. Trammell & Co. v. Mount, 68 Texas 210; Wilson v. Sherwin-Williams Paint Company, 110 Texas 156, 217 S. W. 372; 29 Tex. Jur. 543.

*W. P. Hamblen,* of Houston, for defendants in error, H. C. House and others.

In the absence of proof that a materialman furnished the owner with itemized statements of the material furnished as said material was furnished, Article 5453 is complied with only when notice is given while the owner still has enough of the contract price to pay the materialman's claim and when neither he, nor anyone else interest has not been prejudiced by the delay. Nichols v. Dixon, 99 Texas 289, 89 S. W. 765.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

H. C. House was the owner of a lot in Houston. He contracted with T. B. Hubbard Construction Company to erect a theatre building upon it. The company, as general contractor, sublet to Torpey & Bamberg, a partnership, the plastering work on the building. They, as subcontractors, purchased the plastering material from W. L. MacAtee & Sons, a corporation, which will be referred to as the materialman.

Two suits were filed. The first was an interpleader suit by the general contractor, to determine whether funds ($549.47) it had on hand and tendered into the registry of the court, should be paid to the owner, Mr. House, or to the Citizens' State Bank of Houston, which had advanced money to the subcontractors. The second, the main suit, was by the materialman, MacAtee & Sons, for foreclosure of its alleged lien as well as for personal judgment against the subcontractors for the balance due for plastering material furnished by it to them for the construction. The suits were consolidated.

Upon trial of the consolidated suit it was agreed by all

parties that the funds tendered into court in the interpleader suit should be applied upon the debt owed by the subcontractors to the bank and judgment was rendered accordingly, hence further reference to this branch of the case is unnecessary.

The trial court rendered personal judgment upon the main branch of the case in favor of the materialman against the subcontractors as a partnership and individually, as sought, but judgment fixing and foreclosing the alleged lien was denied.

The Court of Civil Appeals upon original hearing, held there was error in the trial court's judgment for failure to award the materialman a foeclosure of its lien and rendered judgment in its favor for $1710.47, with interest, together with foreclosure of lien upon the lot and improvements. Upon rehearing it set aside its former judgment and reversed the trial court's judgment and remanded the cause with instructions to hear evidence only on the issue of "removed material" and to render judgment for the amount claimed, less an amount that might be deductible under the evidence upon such issue, together with foreclosure. 131 S. W. (2d) 785.

Both MacAtee & Sons, the materialman, and Mr. House, the owner, filed applications for writs of error. The application of the materialman was granted upon the proposition alleging substantially that Article 5452, Revised Civil Statutes, 1925, and Article 5453 R. C. S. 1925, as amended (Vernon's Tex. 1936, Art. 5453), do not require as a prerequisite to the fixing of a materialman's lien that the material furnished shall actually enter into the construction of the improvements. The owner's application for writ of error was granted because of the granting of the materialman's application.

We adhere upon final consideration of the record to the view indicated in granting the materialman's application.

Article 5452 R. C. S. 1925 reads:

"Any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or sub-contractor who may labor or *furnish material,* machinery, fixtures or tools, to erect or repair any house, building or improvements whatever; * * * upon complying with provisions of this Chapter shall have a lien on such house, building, fixtures, improvements * * * and shall have a lien on the lot or lots of land necessarily connected

therewith * * * to secure payment for the labor done, lumber, *material,* machinery or fixtures, and tools *furnished* for construction or repairs." (Italics ours.)

Article 5453, as amended (1929), provides that within ninety days after the indebtedness for material accrues, "each person, firm or corporation who *furnished material* to * * * a contractor *or subcontractor* to construct a * * * building * * * shall give witten notice to the owner * * * of each and every item *furnished* and showing how much there is due and unpaid on each bill of *material furnished* * * *, and shall file with the county clerk * * * an itemized account of his * * * claim to be recorded * * * in a book kept for that purpose."

The owner and general contractor admit in their application for the writ that article 5453 does not require the furnishing of notice to the owner as material is furnished, in order to fix the lien, but only requires that notice of the furnishing of the material, accompanied by an itemized statement and proper affidavit, shall be furnished the owner within ninety days of the accrual of the material billed. They admit also that on the date the owner was served with notice of the material bill he had on hand a sufficient amount of money payable under the contract to have paid the balance due for material.

They contend however that at the time the notice was served the improvements were uncompleted; that the funds on hand were not sufficient to both complete the building and pay the materialman, and that since the materialman did not serve the notice until the general contractor had paid off the subcontractors, it should be denied any remedy against the owner because such delay would otherwise operate to the general contractor's injury.

This same contention was made in Wilson v. Sherwin-Williams Paint Co., 110 Texas 156, 217 S. W. 372, and, as pointed out in the opinion of the Court of Civil Appeals upon original hearing, was there settled adversely to the contention stated.

Unless it should now be held that the term "material furnished" as used in the above statues means "material furnished"

*and actually entered into the construction,* the case referred to settles the case. Unless such meaning is now read into the statutes there is no issue of "removed materials."

It was settled in the early case of Trammell & Co. v. Mount, 68 Texas 210, 4 S. W. 377, 2 Am. St. Rep. 479, in construing similar statutes (Arts. 3165-6 R. S. C. 1879), that this Court did not accord to them such meaning.

It was pointed out in the opinion that the holding of the authorities in other jurisdictions were at variance upon the question, some holding the lien could not exist unless the material had actually gone into the construction; others, that if the material had been delivered at or near the building in question, it was sufficient; and still others, that the lien should be upheld even though the materials were not delivered at or near the building and had never entered into the construction.

The construction by this Court was to the effect that the language of the statute did not require that *the material should actually enter into the construction,* saying that "to furnish material for the construction of a house, and to furnish material which enter into its construction, are very different things," and that *to give our statute such construction "is to strain its words beyond their usual meaning,"* and that this "should not be done for the purpose of depriving mechanics and others of the protection which the statute was evidently intended to give them." It was further stated that "there is nothing in the objection that the items of the bill of particulars were not dated," since it was apparent from the bill itself that the work was done during the continuance of the contract, and that the lien, "though not fixed before record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, * *." See also Hemphill v. Gleason, 272 S. W. 275, in which writ of error was refused by this Court.

1 The Court of Civil Appeals in its opinion upon original hearing correctly disposed of the contention under consideration, pointing out in this connection that a similar contention was made in Wilson v. Sherwin-Williams Paint Co., 110 Texas 156, 217 S. W. 372, and that the "rights of the contractor," under the statutes in question "are inferior to those of the materialman."

The owner and general contractor base their contention stated above with respect to the question of notice largely upon their understanding of Nichols v. Dixon, 99 Texas 263, 89 S. W. 765, contending that the materialman should fail, unless he gave the notice as the material was furnished, to secure his lien, if someone is injured by such failure.

2 We do not find it necessary to determine whether the understanding of the Nichols case is correct. It was decided prior to the decision of the Sherwin-Williams case, and Justice Greenwood, speaking for the Court in that case, was careful to say that "the rights of the contractor are inferior to those of the materialman"; and to point out that the duty to furnish and pay for the material "is primarily imposed on the contractor by the ordinary building contract" (as in the present case by contract); and that "if loss must fall on materialman, owner, or contractor, by reason of the default of one chosen by the contractor to perform his obligation, and of one whose acts are, or ought to be, directly under the contractor's supervision, surely the loss ought to fall on the contractor." It is made clear in the opinion that the "right of the materialman" cannot be made to depend "on the state of the accounts between contractor and subcontractor at the date of service of written notice on the owner."

3 The Court of Civil Appeals correctly disposed of the case in its opinion upon original hearing, and rendered the judgment which the trial court should have rendered. Its opinion upon rehearing and the judgment based thereon are erroneous, and is reversed and set aside.

4 It is apparent from what has been stated that there is no issue of "removed materials" in the case, since there is no question under the established meaning of "material furnished" but that the amount of materials for which judgment was rendered by the Court of Civil Appeals upon original hearing, was delivered to the job by the materialman.

Judgment is therefore here rendered for MacAtee & Sons, the same as by the Court of Civil Appeals upon original hearing, for $1710.47, with interest at the rate of 6% per annum from January 1, 1936, until paid, with foreclosure of lien.

It is so ordered.

Opinion adopted by the Supreme Court July 9, 1941.